**The STATE OF NEW YORK, on behalf of itself and the City of Niagara Falls, a municipal corporation, Plaintiff,**

v.

**Donald O'HARA; Cecos International, Inc., formerly Newco Chemical Waste Systems, Inc.; Heavy Equipment Leasing Services Co., Inc.; and James H. Williams, Defendants.**

**No. CIV–83–1440C.**

United States District Court, W.D. New York.

Oct. 22, 1984.

Robert Abrams, Atty. Gen., of the State of N.Y., White Plains, N.Y. (Susan Belgard, Asst. Atty. Gen., White Plains, N.Y., of counsel), for plaintiff.

Borins, Halpern, Setel, Snitzer, Levy, Yellen & Brownstein, Buffalo, N.Y. (Harold H. Halpern, Buffalo, N.Y., of counsel), for defendant Donald O'Hara.

Wilmer, Cutler & Pickering, Washington, D.C. (Andrew B. Weissman, Washington D.C., of counsel), for defendants Cecos International, Inc., and Heavy Equipment Leasing Services Co., Inc.

Duke, Holzman, Yaeger & Radlin, Buffalo, N.Y. (Emanuel Duke, and Gregory P. Photiadis, Buffalo, N.Y., of counsel), for defendant James H. Williams.

CURTIN, Chief Judge.

This action concerns allegedly fraudulent conduct on the part of the defendants in connection with contracts for remedial work at Love Canal. The plaintiff has filed a seven-count complaint, which includes two claims for relief under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 [RICO], one claim under the Federal Disaster Relief Act, 42 U.S.C. §§ 5121 *et seq.* [FDRA], and four pendent claims. Defendants now move to dismiss. This motion is granted for the reasons stated below.

■ Counts one and two are civil RICO claims. These counts must be dismissed in light of two cases recently decided by the United States Court of Appeals for the Second Circuit. *See, Sedima, S.P.R.L. v. Imrex Company*, 741 F.2d 482 (2d Cir. 1984); *Bankers Trust Company v. Rhoades*, 741 F.2d 511 (2d Cir.1984). The complaint herein does not allege any convictions for predicate offenses, nor is any specific RICO injury indicated. Counts one and two are therefore dismissed.[1]

■ Count three, which is based upon FDRA, is also dismissed, because this statute does not confer a right of action upon the plaintiff.

Plaintiff first argues that the State is primarily responsible for all monies funded under FDRA and that for this reason, a right of action under FDRA is implied. The conclusion does not follow from the premise, even if the premise is taken as true.

What is implied in that premise is the right of the federal government to be reimbursed and a duty of the State to reimburse the federal government. The court is not persuaded that a right of action on behalf of the State against private entities is implicit in a duty which may fall upon the State's shoulders, especially when the rights and obligations as between the State and the defendants herein are basically contractual and, accordingly, clearly defined in State common law.

The foregoing also answers the plaintiff's argument that a right of action is implicit in the federal regulations. Specifically, plaintiff invokes 44 CFR § 205.39, dealing with agreements between states and the Federal Emergency Management Agency [FEMA]. This regulation sets forth some of the matters which must be contained in all FEMA-state agreements.

Primary reliance is placed upon 44 CFR § 205.39(f)(3), which relates to amendments to the agreements. When the regional director of FEMA deems it necessary, a FEMA-state agreement shall be amended to address, *inter alia*, "the need for the State to pursue recoveries against responsible parties." 44 CFR § 205.39(f)(3). This language merely alludes to the fact that states may need to proceed against "responsible parties," and that the federal-state agreement may have to be adjusted to accommodate that possibility. This language does nothing, by implication, to confer a right of action.

Nor do I find that a right of action is implicit in the statute itself. No right of action is expressly stated in FDRA. There are "certain limited circumstances" in which a right of action is implied, even though Congress has not taken "the far better course" of specifically providing for it in the statute. *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 374, 102 S.Ct. 1825, 1837, 72 L.Ed.2d 182 (1982), *quoting Cannon v. University of Chicago*, 441 U.S. 677, 717, 99 S.Ct. 1946, 1968, 60 L.Ed.2d 560 (1979).

Determining the existence of a right of action requires an analysis of the four factors stated in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). These are: 1) whether the plaintiff is a member of a " 'class for whose *especial* benefit the statute was enacted.' " *Id.* at 78, 95 S.Ct.

1. The court declines plaintiff's invitation to stay its judgment herein, pending possible proceedings before the Supreme Court in *Sedima* and *Bankers Trust.* The Second Circuit has spoken clearly and decisively in those cases, and the plaintiff's rights in this case can be protected through the usual appellate process.

at 2088, *quoting Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis in original); 2) whether there is any indication of legislative intent to create or deny a private remedy; 3) whether a private remedy is consistent with the underlying purpose of the statutory scheme; and 4) whether the cause of action is one traditionally relegated to state law.

The second, third, and fourth *Cort* factors can be disposed of quickly. There is little evidence of any intent by Congress to create a right of action. There is, if anything, some indication that Congress meant *not* to provide a right of action. The FDRA has provisions for civil and criminal penalties for persons who misstate facts in connection with requests for assistance, violate regulations under FDRA, or misapply loan proceeds. 42 U.S.C. § 5157(a), (b), (c). The maximum penalties under subsections (a) and (b) are $10,000 and $5,000, respectively. Under subsection (c), the maximum penalty is one and one-half times the principal amount of the loan.

The claims against the defendants are for substantially greater sums than the limits provided in the statute, and there is no argument that 42 U.S.C. § 5157 is the source to which plaintiff looks for a right of action. Indeed, the basis of the claim is fraud, which is a traditional state common law claim. The common law nature of the plaintiff's claim, plus the existence of enforcement proceedings completely different from those invoked by the plaintiff, suggest that this sort of claim is not implicit in FDRA.

The first factor stated in *Cort v. Ash* also does not help the plaintiff. It is true that FDRA was enacted for the benefit of states in need of emergency relief. However, this is not a case where the State is being denied emergency relief. The federal government is not withholding funds. Thus, this is not a case where the defendant is accused of not according a federal right to a member of a protected class.

This distinguishes the present case from others in which an implied right of action was found to exist. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, is a typical case. *Cannon* involved a sex discrimination provision in Title IX of the Education Amendments of 1972, which provided that "No person ... shall, on the basis of sex, be ... subjected to discrimination under any education program or activity receiving Federal financial assistance." The Supreme Court held that there was an implied right of action for a female who alleged that she was a victim of discrimination.

Statutory language such as that in *Cannon* and other civil rights cases is the type of "right-creating" language which is normally found in statutes carrying an implied right of action. *Davis v. United Air Lines, Inc.*, 662 F.2d 120, 122–23 (2d Cir. 1981). No such language appears in FDRA.

It should also be noted that this case does not involve a statute which deals with an area of law in which a private right of action has been traditionally recognized by courts. In cases of that sort, legislative silence is often viewed as legislative acquiescence with existing case law. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 102 S.Ct. 1825. In the area of disaster relief, something considerably more than silence is necessary to find an implied right of action. For all of the foregoing reasons, I conclude that the plaintiff has no private right of action under FDRA.

Finally, plaintiff argues that even if there is no basis for the federal claims, the pendent claims still ought to proceed in this forum. I disagree.

The only parts of this lawsuit that are still viable are claims which involve difficult questions of state law. The question of whether a federal court should hear pendent claims when non-frivolous federal claims have been dismissed is a matter for the court's sound discretion. *Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Delicacy of the state law issues involved, and the

principle that federal courts should avoid needless decisions on such issues are factors which favor abstention. *Falls Riverway, Inc. v. City of Niagara Falls,* 732 F.2d 38, 42 (2d Cir.1984).

The present case is still in an undeveloped posture. It would be imprudent to decide such delicate state law issues when there is no need to do so. The pendent claims are therefore dismissed.

To summarize and repeat: 1) Counts one and two are dismissed pursuant to the decisions in the *Sedima* and *Bankers Trust* cases; 2) Count three is dismissed, because the FDRA does not confer a right of action upon the plaintiff; 3) The pendent claims are also dismissed. Defendants' motion is granted, and the complaint is dismissed. Judgment shall enter for defendants.

So ordered.