Richard A. MAUSSNER and Marie Maussner, Plaintiffs,

v.

Joseph J. McCORMICK, Individually and d/b/a J.J. McCormick, General Contractor (The Water Wizard) Defendant.

No. CIV–85–144C.

United States District Court,
W.D. New York.

July 16, 1986.

Hurwitz & Fine (James D. Gauthier, of counsel), Buffalo, N.Y., for plaintiffs.

Joseph A. Sakowski, Elma, N.Y., for defendant.

CURTIN, Chief Judge.

This action arises out of a contract between the parties to construct a single family home for plaintiffs. By that contract, plaintiffs made defendant the general contractor and gave him the right to hire subcontractors to perform parts of the work.

Plaintiffs allege that defendant violated the terms of the contract by, among other things, requiring certain subcontractors to increase their bills with "kickback" commissions for defendant, resulting in overcharges to plaintiffs. Count One of plaintiffs' complaint (Item 1) alleges that defendant's alleged demands for these "kickback" commissions violated the Racketeer Influenced and Corrupt Organizations [RICO] statute, 18 U.S.C. § 1961, et seq. The jurisdiction of this court is invoked solely pursuant to this first claim. Counts Two through Six of plaintiffs' complaint allege other violations related to the contract for which state law is controlling.

Defendant now moves for summary judgment (Items 15 and 19),[1] claiming that plaintiffs have shown neither the "pattern of racketeering activity" nor the type of predicate offense required for establishing liability under RICO. Since I find that the record does not show the requisite "pattern of racketeering activity"[2] by defendant, I grant defendant's motion against Count One of the complaint on that ground, and address it only.

The contract in question here called for plaintiffs to pay defendant 5 percent of the total cost of construction as defendant's general contractor's fee. Plaintiffs allege that in addition to this 5 percent payment, and contrary to the terms of the contract, defendant demanded of certain subcontractors that they include a hidden 10 percent commission for defendant as part of their bill. These bills, plaintiffs allege, were then submitted to plaintiffs without any indication of the commission charge.

In support of this allegation, plaintiffs offer affidavits from two subcontractors who performed work under the contract (Items 21 and 22). Each states that the defendant told them to include a 10 percent commission for defendant in their final bill

---

1. Plaintiff has also moved for partial summary judgment on Count Two of the complaint, one of the pendent state law claims. Since in granting defendants motion we dismiss these pendent claims without prejudice, plaintiffs' claim is denied without discussion.

2. Defendant's actions are alleged to have violated 18 U.S.C. § 1962(a) or, in the alternative, 28 U.S.C. § 1962(c). Both of these sections render unlawful actions conducted "through a pattern of racketeering activity."

18 U.S.C. § 1962(a) states in pertinent part.
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18 United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(c) states in pertinent part:
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1961(5) defines "pattern of racketeering activity" as follows:
(5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity....

to plaintiffs. One of the subcontractors stated that he included the commission charge in his bill; the other refused to. The latter said that he thereafter "began experiencing difficulties with [the defendant]." (Item 23, p. 2.) The "difficulty" cited consisted of defendant's allegedly failing to keep the subcontractor advised, once defendant's construction work fell behind schedule, of when subcontract work could proceed. The subcontractor estimated that as a result, it took him many weeks longer than expected to complete his share of the work, with resulting loss of profit (Item 23).

Plaintiffs contend that these alleged demands for "kickback" commissions by defendant, and the "difficulties" caused for the subcontractor who refused to pay the commission, constitute "extortion," a criminal predicate constituting "racketeering activity" under 18 U.S.C. § 1961(1).[3] Defendant's actions are alleged to have violated 18 U.S.C. § 1962(a)[4] or, in the alternative, 18 U.S.C. § 1962(c),[5] thereby giving this court jurisdiction over plaintiffs' claims and entitling plaintiffs to sue defendant for treble damages on Count One of the complaint.[6]

In order to state a claim under RICO, a plaintiff must allege the existence of seven constituent elements. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). These elements are: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

*Id., citing* 18 U.S.C. § 1962(a–c).

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court observed that Congress and the courts had failed to develop a "meaningful concept" of the "pattern" requirement of RICO. That failure, the Court stated, was a primary reason why "in its private civil [application], RICO is evolving into something quite different from the original conception of its enactors." *Id.* at 3287. The Court noted *in dicta* that while "two acts of racketeering activity" are necessary to form a pattern under RICO, they may not be sufficient. *Id.* at 3285, n. 14. The Court quoted at length from RICO's legislative history, which indicates that RICO requires not only more than one "racketeering activity," but also the threat of continuing activity. "The target of [RICO]," the Senate Report explained, "is ... not sporadic activity." Thus, it is "the factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (*citing* Senate Report 91–617, 91st Cong., 1st Sess. 158, emphasis supplied by Supreme Court).

Numerous district courts since *Sedima* have focused on the Supreme Court's language in order to more clearly define the pattern requirement of RICO. The strong consensus of the courts, including several in this circuit,[7] has been that *Sedi-*

---

**3.** In later affidavits (Item 16), plaintiffs also allege "possible" predicates of mail fraud and wire fraud. I do not discuss the merit of these claims as predicate offenses; since they, like the alleged "extortion" predicate, do not occur as a "pattern of racketeering activity," they cannot form the basis for a claim under 18 U.S.C. § 1961, *et seq.*

**4.** *See* Footnote Two.

**5.** *See* Footnote Two.

**6.** § 1964. Civil remedies.
   (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

**7.** *See Frankart Distributors, Inc. v. RMR Advertising, Inc.*, 632 F.Supp. 1198 (S.D.N.Y.1986); *Modern Settings, Inc. v. Prudential Bache Securities, Inc.*, 629 F.Supp. 860 (S.D.N.Y.1986); *Utz v. Correa*, 631 F.Supp. 592 (S.D.N.Y.1986); *Anisfeld v. Cantor Fitzgerald and Co., Inc.*, 631 F.Supp. 1461 (S.D.N.Y.1986); *Professional Assets Management v. Penn Square Bank*, 616 F.Supp. 1418 (D.C.Okl.1985); *Northern Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985).

ma's "continuity" element requires that the predicate acts alleged to constitute a "pattern of racketeering activity" must have occurred in different criminal episodes, *i.e.*, in transactions "somewhat separated in time and place." *Graham v. Slaughter*, 624 F.Supp. 222, 225 (N.D.Ill. 1985), *citing United States v. Moeller*, 402 F.Supp. 49, 57–58 (D.Conn.1975). In this view, the alleged occurrence of two or more *related* predicate acts is a necessary but not sufficient basis for a RICO claim; the acts must also have occurred in different criminal episodes, thereby denoting the threat of *continuing* criminal activity. This combination of "continuity plus relationship" (*Sedima, supra* at 3285 n. 14) is the warp and woof of "pattern," and the absence of either element means there is no "pattern of racketeering activity." Thus, for example, two or more predicate acts committed in connection with a simple business transaction or in the furtherance of an isolated scheme would not suffice to constitute a pattern.

I concur that this is a proper understanding of the "pattern" requirement of RICO. As the court in *Allington v. Carpenter*, 619 F.Supp. 474, 478 (C.D.Cal.1985) noted, distinguishing between acts in a singular criminal episode and a pattern of racketeering activity "gives meaning to Congress' intended rejection of RICO liability predicated upon isolated or sporadic criminal acts." The need for such a distinction is illustrated by the present case, which is essentially a breach of contract action, and a classic example both of the "increasing divergence" between the use of RICO in civil cases and the "original conception of its enactors" (*Sedima, supra* at 3287) and of a single episode which fails to meet the RICO "pattern" requirement set forth above.

In *United States v. Turkette*, 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981), and in *Russello v. United States*, 464 U.S. 16, 27, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983), the Supreme Court found that the "declared purpose" of Congress in enacting the RICO statute was "to seek the eradication of organized crime in the United States." However, the use of RICO in the present case clearly diverges form any such purpose. Plaintiff Richard Maussner, who had employed the defendant for various handyman tasks for about 10 years (Item 12, pp. 16–17; Item 13, pp. 26–28), testified as follows in his deposition:

Q: Well, do you have any information of your own that would indicate that Mr. McCormick is involved in organized crime in any way?

A: I'm sure he's not.

(Item 12, p. 74.)

The plaintiff also testified to his understanding that absent a contract like his with the defendant, subcontractor commissions are sometimes simply the method by which a general contractor is paid:

Q: Did any of these subcontractors who paid this commission or kickback, as you call it, ever tell you that this was not ordinary?

A: Not in that—in the way you phrased the question. Mr. Hoffman expressed his dismay that he was informed in the middle of the job that he had to pay it. He was not under the impression that it was asked often. I would assume from having delved into the matter that that is—it's done in that fashion by some people, if they don't have a contract like I have with Mr. McCormick, sure.

Q. So, you're saying that because of your contract this commission or kickback should not have been paid?

A. You got it.

(Item 12, pp. 76–77.)

Most importantly, there are no facts from which to infer continuous criminal activity in this case. Rather, everything in the record indicates that the alleged criminal acts occurred in a single, isolated epi-

sode. In *Frankart Distributors, Inc. v. RMR Advertising, Inc.*, 632 F.Supp. 1198, 1201 (S.D.N.Y.1986), the court found that there was no "pattern of racketeering activity" under RICO where the alleged criminal acts "revolved entirely around a single contract, which was to be performed within a limited period of time." This is precisely the situation in the present case: all of the defendant's alleged predicate acts—the two alleged demands for "kickback" commissions and the mailings and wirings by which the demands were allegedly communicated—revolve entirely around a single contract to construct a single residence over a period of less than five months (Item 1, Exh. A). That contract was prepared entirely by plaintiff Richard Maussner (Item 12, pp. 21–22; Item 13, pp. 37–38), and it governs the only transaction at issue here. The transaction has a distinct and easily defined beginning and ending, and all of the alleged predicate offenses of the defendant are contained within its performance.

There are thus no facts in the record denoting any threat of continuing criminal activity which would satisfy the "pattern" requirement of RICO. Indeed, the facts suggest the contrary if anything: plaintiff Richard Maussner stated that beyond the boundaries of this contract, he had ten years of "satisfactory" business transactions with the defendant (Item 12, p. 18). I therefore conclude that the alleged criminal acts of the defendant were all connected with a single transaction and, as a matter of law, do not suffice to constitute a "pattern of racketeering activity."

Defendant's motion for summary judgment on Count One of the complaint is accordingly granted. Because the complaint's other claims derive solely from state law, they are no longer pendent to any federal claim and must be dismissed, without prejudice to their reassertion in a court of competent jurisdiction. *United*

*Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

So ordered.